The next case is 2025-60108, Exxon Mobil Corporation v. the Occupational Safety and Health Review Commission, et al. You may proceed. Thank you, Your Honor. May it please the Court, I am Richard Riley on behalf of Petitioner Exxon Mobil. Mental illnesses are beyond the statutory authority of OSHA. In fact, this case appears to be the first time since Congress passed the OSH Act 55 years ago in 1970 that OSHA has attempted to penalize an employer for failing to record an alleged mental illness. That cannot be for lack of opportunity. Mental illnesses are a problem in America, and workplaces can be a contributing factor. But Congress did not create OSHA to address this problem, and the agency has never deemed mental illnesses as within the proper ambit of the occupational health and safety standards that lie at the core of its mission. But the agency exceeded its authority in 2001 in creating the obligation that it seeks to enforce here, and it acted unlawfully yet again. So, after 2001, were reports made, these voluntary reports, did people try to comply with this regulation? They did, and Exxon tried to comply. We were on notice, and I want to be clear about my due process, we were on notice that the agency thought mental illnesses were recordable. We had notice of that. We think they're wrong for Loper Bright, that's my statutory argument. What we are not on notice of goes to the second opinion opportunity. The agency set up a first opinion triggering event, and then a second opinion opportunity at the back end. All right, let's back up a little bit. Let's unpack your assertion that the statute doesn't encompass mental illnesses or mental conditions caused by physical injury, whatever it may be. Yes. Talk a little bit more about that. So, OSHA may only require reporting of work-related deaths, injuries, and illnesses, other than minor injuries requiring only first aid treatment. So, the text, context, and structure show that illness in this phrase mean physical illnesses, not mental illnesses. The statutory directive is couched in decidedly physical terms where it appears in Section 8C2. Section 8 itself is an inspection provision that relates to physical safety hazards, not mental illnesses, and the OSHA Act as a whole directs the agency to address occupational safety and health concerns, which are physical in nature, and I can walk through each step, starting with 8C2 itself. The phrase deaths and injuries, of course, refers to physical calamities. Illnesses is linked together with them under the associated words canon, and there are other words right next to them, first aid treatment, loss of consciousness, restriction of motion, that give meaning to the term. But those are for minor injuries. They are, but injuries there, and the agency, I think, agrees with me on this. Injuries refers back as a shorthand for illnesses and injuries. The severity criteria, the agency does apply to illnesses, including mental illnesses. It actually says that in the preamble, and that is actually textual in support of what I'm saying. Congress understood that in using injuries to refer back as a shorthand to illnesses and injury, that the two are closely linked in a textual sense. That's part of the case I'm making textually for why I read it this way, but there's more. When we look at Section 8 itself, the purpose of Section 8 is to set up an inspection provision that concerns, quote, conditions, structures, machines, apparatus, devices, equipment, and materials therein. The reporting mechanism is in service of that. When inspectors go to a site, they can look at the reporting log and say, for example, they see in the reporting log that there are a bunch of instances of people falling off a balcony or downstairs. The inspectors know to check the regulations. It doesn't make sense in the mental health setting, because a mental illness would often in the workplace be caused by something else, like a difficult boss, poor pay, difficult colleagues, difficult tasks. So OSHA's not suited for those types of things? That's right, and it doesn't actually... A new sign or stairwell or rail for that? That's correct. But what about mental conditions or injuries to the brain, the cognitive function, et cetera, that are caused by physical events? That's what we have here. Well, so there's a distinction between a mental illness, which goes to cognition, to behavior and emotional regulation, and an injury. So a concussion is not a mental illness. It's a physical injury or illness. Here, there is no... Employee 2 did not suffer a physical injury. There's not a reporting obligation as to any physical injury. It's a mental illness. But what about, like, I mean, I've read in the media lately about fume events on planes and pilots, specifically, or crews, suffering long-term ALS brain function, changes in personality, other physiological changes in their brain that lead to mental suicide, et cetera, and so forth. I mean, those are workplace injuries, are they not? Certainly, if you have exposure to fumes, there may be injuries that are unquestionably reportable within that. To the extent that the agency might be able to have a more narrowly tailored regulation where the mental illness could follow on from some type of mental illness, it might be on stronger footing. That's not how it is structured. This regulation doesn't describe this case. So that's a rare exception that I don't think swallows the rule here. So that's a physiological thing that produces mental changes? Yes. As opposed to, we don't know what caused the mental problem. That's correct. And to the extent that there's a physiological change that is itself an illness, it's reportable as an illness, a physical illness, under the agency's regulations, and we're not challenged by that. What if you're raped by your boss, and then you'd have PTSD for that? That's a horrible thing, but I don't think that's within OSHA's power. So it's a physical thing, and then it has a mental, so I was trying to figure out where you're talking about. Yes, and there are systems in this country for dealing with that. But do you think OSHA reporting is not one of them? I don't think so, and I would note that that has… What about lighting, fluorescent lighting, other lighting, or conditions like that that might lead to seizures? I guess that's a physical injury, but what if it leads to a mental-only condition? Then I don't think it would be reportable, and I think that goes to the problem that there's no limiting principle here. What about this sort of healthy office environment type thing? You need good lighting. It can lead to depression if you don't have a window, or something like that. Yes, there's no limiting principle to what the agency could do to regulate everything in the workspace if lighting, architecture, behavior of bosses, so on and so forth, is an occupational hazard that can be regulated under Section 6. OSHA would use that authority over mental illnesses to become the regulator in the workspace and take over other agencies' roles. That's not what Congress did with creating this agency. Has this argument made… The reason this argument hasn't been made before is because they've never sought to enforce it. We've never seen an enforcement incident, and none has been cited to us. I'll note, and this is not on the record, but I will note we did ask in discovery in the administrative proceedings for instances where there have been citations for failure to report mental illnesses, and we got nothing from the agency, so we're not aware of this ever being enforced. I definitely don't think there's case law on this, and we haven't been cited to anybody by the agency. Turning briefly to my due process position, the agency, as I said, put the public on notice of a simple framework that was specific to mental illnesses. A mental illness is not reportable unless the employee presents an opinion meeting certain criteria. If that occurs, the employer may seek a second opinion. The ALJ did not dispute that the agency had not restricted the second opinion opportunity. The ALJ, however, felt that some restrictions were necessary and so imported them from agency guidance concerning physical injuries and illnesses, and most of them were at a different step of the record-keeping analysis. Maybe the ALJ is right and there should be limits, but it's not correct to do it post hoc because the agency gave notice to the public before proceeding via penalty, which it didn't have to do, and moreover, the standards that the ALJ fashioned were not, through a process of reasoned decision-making, that took into account the factors that the agency itself had recognized were necessary for mental illnesses. So could we reach the arbitrary and capricious due process argument without addressing whether the mental illness reporting requirement is authorized by the statute? You could. And just vacate it for that reason? Yes. And not deal with the main issue in striking that down? I agree, Your Honor. There's three arguments we presented, a due process argument, an APA argument, a statutory argument. Any of them would be sufficient for us to obtain full relief. The court could address them in any order that it chooses. I would leave that to the discretion. And I'm not foreshadowing. I'm just trying to figure out, get a handle on your arguments. I agree with how Your Honor views the case. On my due process argument, the case law says that an agency has a responsibility to state with ascertainable certainty what is meant by the standards it has promulgated. This court said in Diamond Roofing that a regulation cannot be construed to mean what an agency intended but did not adequately express. This requires precision and guidance. That's what the Supreme Court said in FCC v. Fox Television Station. Here, the ALJ relied on guidance that concerned physical injuries and illnesses, and most of it concerned a different regulation, 1904.7, not 1904.5. The public, my client, could not have known that these standards would apply in making its record-keeping decision because there's nothing in any of the guidance that indicated that it applied to a mental illness case, which, as I noted, the agency had already indicated when it promulgated the rule were fundamentally different from other cases. An employer would expect that there would be some mention of mental illnesses and the unique factors that are in play. And this case illustrates that. The ALJ said that as soon as Employee 2 missed work, the second opinion opportunity had vanished. But Employee 2 didn't come back to work after the incident, which, of course, is understandable. And there was no initial PTSD opinion provided to ExxonMobil until March 8, so that's a period of almost three months. According to the ALJ, there was no second opinion opportunity because it ended in December, well before there was ever a first opinion. There's no way Exxon could have known that was right because, as I said, none of this guidance provided notice that it would apply in a case like this. And the APA standard is not met. How can the time, just logically, how can that be? I apologize. How can it end before the first one ever gets there for the second? I mean, that's Kafkaesque, isn't it? That is, and that's our point. Under the APA, it's incoherent because you would expect the agency to address problems like this. It is ordinarily the case in a mental illness scenario that it takes time. Symptoms have to persist for a meaningful period of time before they are clinically significant. So we can't identify a date when there is an injury like we can in the physical injury space and tell an employer, you need to have someone ready to go to examine that person right away, which is what the guidance is talking about. It says that in assessing severity, 1904.7, the employer needs to have a medic or someone ready to go come to the scene, there's the accident, and look at that person and say, it's my opinion that only first aid treatment is necessary, no days of work are necessarily missed. And that makes sense in the physical injury context. But you don't know if someone's going to get PTSD. That manifests itself sometimes a long time after some other triggering incident. Subsequent can sometimes trigger PTSD from the first thing. Yes. You know, a year later. Yes, that's exactly our point. And so here we have a set of rules that are incoherent. That's our APA argument. We didn't have notice of them. We couldn't have had notice of them. That is our due process argument. I want to briefly address the ALJ's view that none of this mattered because the ALJ believed employees who did have PTSD. That is not material under the rule because the agency set up a process-based system, not an outcome-based system. And that's very similar to this court's decision in the last Exxon case in 2017, where the Department of Transportation had identified a process and said this is how you identify risks with pipelines. Exxon did not identify a particular risk. The agency said it should have because there was a pipeline burst. This court said that didn't matter because that's not the regulation set up. We have the same here. I'm into my rebuttal time. Thank you. Thank you. Ms. Naughton. Good morning, Your Honors, and may it please the court. I'm Sheila Naughton. I'm counsel for the Secretary of Labor. This case concerns ExxonMobil's failure to record a reported post-traumatic stress disorder diagnosis following an explosion at their Baytown refinery plant. Under the authority of the statute, OSHA has prescribed only narrow circumstances under which mental illness will be required to be reported for OSHA. Well, let's see where that authority comes from at all. Yes. You heard counsel opposite's argument. I assume you have a separate reading. Tell me how you get there. Yes. Our separate reading is that the statute is broad with respect to what illness, injury, and death should mean. This is found in the record-keeping authority. Importantly, that's a separate section from what counsel and my colleague on the other side described, which is the standard-making, which is what we typically think of with OSHA. Those are the safety and health standards that prescribe for employers specifically what they need to do. That is in Section 6. We're dealing with Section 8, which deals with record-keeping. Record-keeping, by its very nature, is broad. It's searching. OSHA is intending to gather information about what is happening in the workplace and how that is affecting people. Now, they're talking about the characterization of illness. Our definitions we prescribe are broad. They characterize the entire body. The Secretary's position is that it would be a broader reading. It would include all parts of the body, including the mind. Judge Wilson, you discussed in prior counsel's testimony the blurriness between this mental-physical distinction. There are physical manifestations of mental illness. There are mental consequences of physical illness. It can be difficult to distinguish. But you do have language in the statute that requires or sort of excises minor injuries requiring first aid, don't involve medical treatment, loss of consciousness, restriction of work or motion or transfer to another job. Those are all physical things. Yes, Your Honor. Those are severe. That is a limit on the severity of the illness. That's intended to… But they refer to physical things. And that does also modify the death injuries and illnesses that come before that in the statute, doesn't it? Yes, Your Honor. It does modify. I will say there are other illnesses that we understand should be required or authorized to record. Needle sticks from injuries from blood-borne pathogens, asbestos. That's physical. Yes, but those don't necessarily meet those types of severity. That's not the type of injury that severity would characterize. I apologize. Let me restate it to be a little bit more clear if I can. That is an existing limiting factor on what illnesses and injuries can be required to be recorded. However, that's not necessarily that all injuries and illnesses that need to be recorded must be able to fit into that category. We're saying by their very nature, those things that don't have those aspects would not be recordable. But what I'm trying to say is that not all illnesses and injuries that are required to be recorded fit into that characterization. Exxon's own definitions are equally broad. They describe only the body generally, and that would include mental illness. And at the time of 1970 when the OSH Act was passed, it would have been understood that the goal of the agency would have been to regulate health and safety broadly, and that would have included the whole body in health. But where's the evidence for that at the time? I mean, the definitions from the dictionaries are not very supportive, I view, if we go that route. Well, respectively, I think that they are. I wouldn't concede that. But I think that you could also look at the legislative history to understand what the types of discussion was going on at the time. And if you look at elsewhere in the statute. But it also took, what, 30 years before this regulation was issued, right? Wasn't it 01? But this was initially proposed as an exclusion. Since the inception of the OSH Act, as the 2001 preamble said, mental health has always been considered recordable by OSHA. It just doesn't come up that often because it must meet these other recording criteria. It has to be sufficiently severe. There can't be any confounding factors. You said it doesn't come up very often. Yes. Has there ever been a proceeding brought against an employer for failing to report? There has been a citation prior. This wasn't contested, so it's not documented in commission history. Just one? And there may be more. We're only able to look back to 2012 with our current data right now. So you can find one? Yes. Since 2012? But if you read, understandably, because this is. Is that correct? That is correct, yes, Your Honor. I apologize. That is because the regulation is rather narrow in what circumstances. It just so happens that these are those exact circumstances. Do you report the rape? I'm sorry? Do you report the rape in my hypothetical to OSHA? Your Honor, this is not going to be a satisfying answer, but it would really depend on the factual circumstances. What happens is the employer. What do you mean if it's in the workplace? It's happening during. It's not on a lunch hour. It's during the 9 a.m. morning meeting. It would need to. It would need physical intrusion. So it's got a physical element to it. And it causes PTSD every time they see the company logo. Now, the regulation would require that you would prove that it's not only work-related, but that it's a new case. We're not requiring the instance be reported of the injured, like the act of rape. It is the illness. It would be the effect of that. It is the harm to the person because that's what the statute says. Why is it like the fire if mental is supposed to be covered? I'm sorry? I don't understand. I understand that. That's okay. If I can just, maybe if it would help if I could just describe the standard more specifically, or the regulation as it's written. So regulation has stated that you're required to report work-related injuries, illnesses, and deaths so long as they are a new case and they are sufficiently severe. We here are dealing with work relationship because OSHA identified in the 2001 rulemaking there are certain categories of illnesses and injuries that don't neatly fall into that category, that might show up at the workplace, but don't necessarily fall into the category. Was there any challenge to these rules, like pre-enforcement challenges at the time? There was a prior. There was a prior case, I believe, settled, Your Honor. I don't have the case name in front of me right now, but there was one. But under a coroner's process, this is a challenge. So we are being asked to pass on this issue for the first time? Yes, Your Honor. And there's notice and comment and everything, and it discussed all these difficulties and issues overcome?  Yes, it discussed it, and it discussed the fact that this had been the understanding prior to 2001. Do you agree that we, at Post Slope or Bright, we're not really supposed to look into all those other things? We're just supposed to look at if it's the best under the text? You're sort of telling us that we should look at the legislative history and we should look at all these other things and defer, and we're really not deferring, and we do Maxwell and Lope or Bright. Is that right? Respectfully, Your Honor, I don't think we're asking you to defer. We're asking for the best reading of the text here. Just the straight-up best reading of the text? Yes. We would also point to Bostock and say that this is actually a case where Exxon is trying to carve out an exception for mental illness where it's meant to be broad. This is meant to encapsulate all illnesses and injuries, not just the small subset of physical injuries and illnesses. By its nature, recordkeeping is broad. We are trying to search and identify issues. Well, one of the things that came out of this is moving, I guess, issues a little bit, but one of the things that came out in the rulemaking, as I understand it, is this preamble that talks about an employer's right to a second opinion. Yes. How does that work? Yes. So the recordkeeping regulation, that specifically states that an employer, if they have questions about the work-relatedness of an illness, they can seek a second opinion with respect to mental illness. What does it mean when the employer gets a second opinion? What's the effect of that? They can take that opinion and they have to make a reasonable determination. That has been the standard. They being the employer? The employer has to make a reasonable determination about whether or not it's work-related. So if the second opinion says, this employee does not have PTSD because of workplace incident, that's conclusive? Not necessarily, Your Honor. Where is that spelled out in the rules? It's in the case law. In the case law? Yes. It's in the commission case law. So the commission case law says what about an employer's rights? I mean, if you have a dueling first opinion and a second opinion. It doesn't speak directly to the first and second opinions. It speaks more broadly to the employer's determination of reason, their reasonable determination. That's a MoCo and Shaw Global. It's under the employer knowledge section of the ALJ's opinion. They discussed that. And in that case, they found that Shaw Global was a much more comparable case because the employer had been made aware that there was a mercury poisoning incident. They knew about the treatment. They knew about the diagnosis and nothing else was there to dispel that understanding that there was a reportable illness. In this case, we would argue that there are four opinions from qualified practitioners. But none of them were an employer's second opinion. Your Honor, I would disagree. They were able to, they used, two of them were from an Exxon's own employee assistance portal. But that doesn't, that's not what that preamble says. It says the employer has a right to a second opinion. Yes, but that doesn't change the right, the responsibility of an employer to make a reasonable determination of work relatedness. Well, but the employer here didn't get a second opinion. We would contend that they did get a second opinion, Dr. McCann. They requested from their employee that they go see a psychologist. The employee went and got probably a third opinion, I think, by that point. Maybe a fourth. But the employee was doing it. The employer tried to do it. The employee refused, and they were denied a second opinion. The employee went to Exxon's materials to identify a psychologist. But the point is that the preamble, the rules, nothing in OSHA's procedures that are prescribed here spells any of this out. Respectfully, Your Honor, it does spell out that the employer can't deter a reasonable employee from reporting an illness. Well, that's not what we're talking about. It is, though, Your Honor. The employer gets to get, has a right to a second opinion. That's what the preamble says. But that's why I asked all those questions about what is the import of the second opinion. The rules don't spell it out at all. Here, the employee did what a reasonable employee would do. They went to a counselor. They went to a therapist. They went to their family doctor. Then they went to a doctor on Exxon's approved list. None of that is an employer-directed second opinion, like you'd have in the workers' compensation context or an independent medical examination or other things like that. The employee doesn't get to dictate the employer's second opinion. That seems logical to me. But the rules don't spell that out anywhere. Respectfully, Your Honor, this regulation does state that the employer has to create a standard. This is, in this case, we are looking at these specific facts. The employer was creating a system where there was, it was a competition of endurance between the employee and the employer. No, no, no, no, no. The employer wanted a second opinion. The employer wanted the employee to go to a provider that the employer chose. That's clearly what the preamble references. And the employee refused to do so. And the ALJ said, well, I'm going to discount that because that person never saw the employee. That's not the way this can work. Respectfully, Your Honor, I think that if you read the regulation, this is just a work-relatedness determination. It is broad. The presumption is that if it occurs in the workplace, it is work-related. But the employee cannot frustrate the employer's right to a second opinion, and that's what happened here. The ALJ credited it. The ALJ credited what exactly, Your Honor? I'm sorry. The employee never submitted to a second opinion requested by the employer. But the employee testified that they believed they had provided their second opinion when they went to Dr. McCann. Again, how in the heck does the employer know that that's sufficient under the regulation? There's no way they know that. Because their responsibility is to make a reasonable determination of whether or not it's work-related. But they have a right to a second opinion in doing that. That's not an unlimited right, Your Honor. Where does it say that in the rule? That's understood by the fact that there's all this guidance saying when you can rely on a second opinion in the case of physical ailments and illnesses. Physical. This is mental. It's different. It is already different. The rule acknowledges that it's different. But the rule doesn't spell any of this out. The rule does prescribe a specific situation where mental illness will be reported. That's not the case for physical illnesses. Agency has already distinguished mental and physical illnesses, so it's appropriate to look at other guidance existing for physical ailments. Maybe so, but that has nothing to do with whether the employer gets a second opinion or not. And here the ALJ just said, well, you've got a second, a third, a fourth opinion, and you're not entitled to that employer. But the employer is entitled to one second opinion that the employer directs. And that didn't happen here. We would argue that it did happen. But again, where do you ground that argument in the text of any rule, any guidance, anything the employer would have known beforehand? Because if you read the standard alone, it just says that once you get this qualifying opinion, it is no longer accepted. The general presumption, I apologize, I should have started with this. The general presumption is that if it occurs in the workplace, it's work-related. Now, there's nine exceptions for cases where that presumption would not apply. One of them is for mental illness. Mental illness will not be considered work-related for record-keeping purposes unless a qualified provider provides an opinion, and it defines what that means. Here we have four opinions, so the exception no longer applies. Now it is up to the employer to determine work-relatedness. When they're making that determination, they can seek a second opinion. They can seek a second opinion. They were not allowed to do so here. They were. They saw it. They got the psychologist's opinion. They had four opinions. But the employee said, I'm not going to anybody else. It frustrated their right to have a second opinion. I think that's an issue of fact here. That was whether or not they had abundant information, and they had that here. But the rule doesn't talk about abundant information. The rule says the employer gets to have a second opinion. And my point about all this, obviously, is nowhere is this spelled out by the agency. And so when we fall into the due process arguments that the petitioner is making and the arbitrary and capricious standard of the APA, I don't know how you survive this and the facts of this case. I'm not disputing any fact at all. I'm disputing that the regulation spells any of this out so anybody knew what the import of the second opinion would be. I believe it does because this is meant for work-relatedness determination. We're not clear that Exxon was concerned about the work-relatedness decision here. They've provided lots of different reasons why they wanted the second opinion. None of it is about the fact that there was an explosion, a discreet event in the workplace, and then a PTSD diagnosis. There was a clear nexus. OSHA here is concerned with that nexus. It's between workplace and injury and illness. That's what the issue is here. And I would point the judges again to 1904.35, which specifically directs employers that their responsibility is to create a system that would not deter a reasonable employee from reporting illnesses and injuries. Here, I think that that's just what happened. The employee testified at trial about the difficulty of even seeking that second opinion from Dr. McCann because he had already told his story. He had gone to somebody who he believed Exxon approved of because it was through his employee assistance portal. This just, how does this work? You know how OSHA, like these companies, refineries, like this one, put up signs that say, so many days without an incident. You know, they're very proud when they don't have any injuries or things to report. If you have somebody, and mental illness is not supposed to be stigmatized in our society, but if you have somebody with ongoing PTSD that works for you, you don't have, you have a zero, you will never have so many days without reported injuries because the person has a continuing mental health issue. So that's, I don't understand. Are you saying that the onset of the explosion is the date? Or is it the year later or the month later? And it goes on forever as long as they're employed there? And does that create incentives for people not to have employees that have mental health issues? Because they're, how does this even work? With in terms of OSHA being, trying to get companies to do compliant things. Yes. OSHA's perspective is that this is not meant to be something you celebrate. This is, if you look at 1904.0, it talks about how this is not meant to be something about fault or blame, or to even come up with anything about workers' comp. This is just about identifying events in the workplace and illnesses. But that's what they do when they say we don't have any injuries in the workplace. That's a big deal to not have injuries in your workplace. The safety department, and that's why they're always telling you to use the handrails when you go on a refinery tour and you have to wear the hard hat, even if you're just on the premises, if you've ever done inspections as a lawyer. You know, it's totally different than normal OSHA. That's because it is a different part of the rule, and of the regulation of the standards, Your Honor. That, you're thinking about with the handrails, that's safety standards, and that is a different standard than reportability. Okay, can you help us? Yes. How is our employer supposed to know whether an employee has missed days of work or received treatment for a work-related mental illness if employers are under no obligation to seek out information on mental illnesses from employees? And if they don't know that, then how will that trigger their duties, the same duties that you were talking about, Judge Wilson? Yes. That's because they don't have any duty to seek it out. They would find out that they missed days of work when the employee chooses to start the process by reporting that. And it could already be too late for them to get a second opinion. No, Your Honor. It's once they make the determination of whether or not it is reportable that that seven-day timeline starts. Now, if there are still questions about reportability, that timeline hasn't started. Exxon was under the responsibility once they received those opinions to make a reasonable determination and gather information. I would argue that they had abundant information, not only from the four providers, but from their knowledge of the event. They knew what had happened. This was a massive explosion. The testimony showed that. And that's not something that Exxon wasn't aware of. The refinery was shut down for months after. They knew the extent of the damage. They knew at the time that they received this documentation. Now, to your point, this is not common because there is a narrow circumstance. We want to respect the employer's time and efforts and the employee's privacy. So it's only when the employee deems it necessary to report it. Now, in this case, I would argue that Exxon's actions in this case are actually deterring the employee from coming forward and, to your point, stigmatizing mental illness by treating it as this game that you have to meet a higher standard to prove it. When he's seen four professionals, and that was that. When they relied on their second, what they considered as a second opinion, they told that professional there was nothing to see here. There was no traumatic incident. So they did not. But that's because the employee refused to go meet with the provider. They knew the event. They did not provide unbiased information to Dr. Jopic to conclude whether or not there was PTSD. But the employee refused to go see the doctor. Again, abundant information. I take all your points, except that where you're going to stumble over is the actual language of the rule. In the event the employer does not believe the reported mental illness is work-related, the employer may refer the case to a physician or other licensed health care professional for a second opinion. And you can't say, well, the employee got three opinions, four opinions even, and chose somebody off their approved list of providers, and that meets that rule. It doesn't. It doesn't. And to the extent that the agency intended it to do so, you never gave them notice that that would be the case. I'm sorry, did you have an answer? No, I just wanted to note that my time is up, but I'm happy to respond. Please respond. I just wanted to say I acknowledge that. I think that our position is that these facts do meet the standard. I understand that that's not your position. Our understanding is that they didn't receive a second opinion, but I understand that that's not. Assuming arguendo that we were to believe that it's arbitrary and capricious and lacks due process, but also assuming arguendo that we believed that it's not permissible under the statute, does the agency have a viewpoint on what would be the correct way for the court to proceed? Are you saying that you're accepting both arguments, the statutory and their APA argument? And also, yeah, the due process also. Due process. Arbitrary and capricious. If they run the table, assuming arguendo, what is the proper thing for the court to do in the agency's mind? In the agency's mind, if the court disagrees with the legal conclusions, then they should rule on those. If it's a factual determination, but there's still substantial evidence on the record and the ALJ's determinations were reasonable, then it should be upheld. Do we have a duty not to strike down the regulation, vacate the regulation if the case can be decided more narrowly? Do we have any sort of duty to do that? Your Honor, I'm not aware of that right now, but I think it would be discretion would be useful. Thank you. We have your argument. A few quick rebuttal points. I want to start with Channery Doctrine, which says that the opinion of the ALJ has to rise or fall on the grounds provided. The grounds that my friend just provided are not what the ALJ said is the basis of the opinion. My friend's principle theory is that the Joppa opinion was not a second opinion. It might have been a third or fourth opinion or something like that. That's not what the ALJ found. The ALJ understood it to be a second opinion and the ALJ said it was not authoritative. The reason the ALJ didn't say that it was a third or fourth opinion is that it wouldn't have worked on the facts or the law. It wouldn't have worked on the facts because the opinions that my friend referenced were received contemporaneously by Exxon on March 8th. My friend, I think, is counting the Ordoneo opinion as the first opinion and the McCann opinion as the second opinion, but Exxon received both on March 8th. So there was no referral for a second opinion by even employee two at that stage, much less by Exxon. It wouldn't work on the law for the reason that Judge Wilson suggested. The preamble says that the employer may refer the case to a second opinion. That occurred with Dr. Jopic. That's the second opinion. It's the only second opinion and the ALJ did not find otherwise. I was somewhat confused by my friend's suggestion that we still had an opportunity to obtain a second opinion when we did receive, as of March 8th, because that's not what the ALJ said. The ALJ said we lost that opportunity as soon as employee two began to miss work. That happened in December, well before that. Additionally, the ALJ also said we lost the opportunity when employee two began receiving treatment for PTSD symptoms. That occurred in February. He was being treated for PTSD symptoms before there was a PTSD diagnosis. Is that reasonable by the practitioners? I don't have a view on that, but I do think that the agency, for purposes of the APA, needs to provide standards that deal with that type of problem because it is common, and for purposes of the Due Process Clause, it needs to provide notice of what that is before seeking a penalty. My friend referenced the Amico case as the decision that put us on notice of the standards. That doesn't work for a lot of reasons. One, it's a physical injury case. Two, it's a 1986 case, well before this regulation was even promulgated. And my friend then suggests that there's actually a reasonable determination standard that applies. Well, the ALJ didn't say that. The ALJ looked to the guidance, which my friend has precious little to say on because it's not about mental illnesses, and didn't say that there was some type of reasonableness standard. Why didn't the ALJ say that? Because that, too, would not have worked. That standard is found in a different regulation, 19047b3, Romanette 2. It says, if you, the employer, receive recommendations from two or more physicians or other licensed health care professionals, you may make a decision as to which recommendation is the more authoritative. That concerns a different step of the regulatory process. It's not 19045 where we're deciding whether there is a work-related mental illness at all. It's the severity assessment. It's a different step. We would not have noticed that that analysis applies in 1904.5, and, in fact, this is good textual indicia that it doesn't because the agency knows how to provide a reasonable decision-making process, and it didn't in 1904.5. It said there's a first opinion and then a second opinion. We were deprived of that opportunity in many different ways. Finally, as I've said, the ALJ's view that employee 2 had PTSD is completely beside the point, and no amount of substantial evidence that my friend referenced matters because that's just not what the regulation requires. It doesn't require us to figure out whether there's actually a PTSD case because that would be extremely difficult. Exxon has tens of thousands of employees and hundreds of cases pending at any given time, and the process of figuring out whether someone has a mental illness is extremely difficult. That wasn't the standard that the agency set forth. It wasn't what it provided notice of. It wouldn't make sense. And so the substantial evidence point simply misses the legal point here. They're not material facts at all. So we don't have any justification for the decision based on what the decision actually said and the fact that my friend understandably is struggling to defend just shows that the agency itself does not understand its own rule. That proves my point. Thank you. Thank you. We have your arguments. We appreciate the arguments. The case is submitted.